UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DAWN BORUM,

                    MEMORANDUM AND ORDER

           Plaintiff,         CV 08-1488

                         (Wexler, J.)

  -against-

THE VILLAGE OF HEMPSTEAD and
CHIEF JOSEPH WING in his official
and individual capacity,

           Defendants
---------------------------------------------------------------X

APPEARANCES:

    LAW OFFICE OF MICHAEL G. O'NEILL
    BY: KOSTA KOLLEF, ESQ.
    Attorneys for Plaintiff
    30 Vesey Street
    New York, New York 10007

    BOND, SCHOENEK & KING, PLLC
    BY: HOWARD M. MILLER, ESQ.
    Attorneys for Defendants
    1399 Franklin Avenue, Suite 200
    Garden City, New York 11530

WEXLER, District Judge:

    In this action Plaintiff Dawn Borum ("Borum" or "Plaintiff"), a detective with the Police Department for the Village of Hempstead, alleges employment discrimination in violation of 42 U.S.C. §1983 ("Section 1983"), and Title VII of the Civil Rights Law, 42 U.S.C. §2000e-2 ("Title VII"). Plaintiff also claims employment discrimination in violation of Section 296 of the New York State Executive Law (the "State Human Rights Law"). Named as Defendants are the

1

Village of Hempstead (the "Village") and Joseph Wing, the Village Chief of Police ("Chief Wing") (collectively "Defendants"). Presently before the court is the motion of Defendants, pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

I. The Allegations of the Complaint

In light of the fact that this case is presented, at this juncture, as a motion to dismiss, the court accepts as true the facts set forth in Plaintiffs' complaint.

Plaintiff is an African American female who is employed as a detective in the Village police department. On or about April of 2006, Plaintiff became disabled, as a result of an on the job injury. Pursuant to the Village sick leave policy Plaintiff is entitled to remain on sick leave until she has recuperated sufficiently to resume her police duties.

It is the specific terms of the Village sick leave policy (the "Leave Policy") that form the factual basis of Plaintiff's complaint. According to Plaintiff, the Leave Policy requirement that she remain confined to her residence for the majority of time deprives her of her right to leave home to attend religious services. Plaintiff characterizes the interference with her ability to practice her faith as a deprivation of her First Amendment right to free exercise of her religion, in violation of Section 1983. Plaintiff also alleges that the Leave Policy is enforced in a discriminatory manner with respect to African American females, and those who are disabled. These allegations of disparate treatment are alleged in support of the notion that the Leave Policy is applied to discriminate on the basis of gender and race in violation of Title VII, and on the basis of gender, race and disability in violation of the State Human Rights Law.

2

## II. Prior State Court Proceedings

### A. The Article 78 Proceeding

In September of 2007, the legality of the Leave Policy was the subject of a proceeding commenced pursuant to Article 78 of the New York Civil Practice Law and Rules(the "Article 78 Proceeding"). Plaintiff was named as a petitioner in the Article 78 Proceeding, along with Sargent Frank Mylett, a fellow police officer, John Murphy, the president of the Hempstead Police Department Benevolent Association (the "Union"), and the Union (collectively "Petitioners"). Named as respondents in the Article 78 Proceeding were Chief Wing, the Mayor of the Village, the Village Police Department, and the Village (collectively "Respondents")

The Article 78 Proceeding challenged the validity of the Leave Policy, alleging that decisions made pursuant to the policy are arbitrary, capricious and an abuse of discretion. The Article 78 Proceeding also alleged that the Leave Policy was "facially violative of Petitioners' constitutional rights, privileges and immunities." The relief sought in the context of the Article 78 Proceeding included, <u>inter alia</u>: (1) a declaration that the Leave Policy was null and void; (2) injunctive relief against enforcement of the Leave Policy and (3) an order compelling respondents to "promulgate rules and regulations to ensure non-arbitrary application of sick leave requirements which are rationally connected to the Police Departments' monitoring of its sick and injured members."

Petitioners in the Article 78 Proceeding set forth three causes of action. The first cause of action alleged that the Leave Policy was instituted in violation of lawful procedure, was arbitrary and capricious, and an abuse of discretion. The second cause of action alleged that the Leave Policy violates the Constitutions of both the United States and New York State. Finally,

3

Petitioners' third cause of action sought attorneys fees in connection with the alleged Constitutional violations.

In support of their legal theories, Petitioners argued that the Leave Policy, which, in effect, required twenty-four hour home confinement, deprived police officers on leave of the rights to travel, free access, free association, privacy, liberty and religious worship. It was also argued that the Leave Policy deprived officers of their rights to freedom from "bodily restraint to compulsion and freedom to treat their injuries, freedom to participate in union activities, freedom to walk, stroll or loaf, as well as equal protection under the laws of both the United States and the State of New York." With respect to Plaintiff Borum, in particular, the Article 78 petition alleged that the Leave Policy prevented her from attending her house of worship, from taking her children outside of her home and "from any activity that requires her to leave her residence."

Respondents moved to dismiss the Article 78 Proceeding as moot. In support of the motion, Respondents argued that the issuance of "General Order #27" cured any possible Constitutional defect of the Leave Policy. In an opinion dated March 11, 2008, Justice Spinosa, of the Supreme Court for the County of Nassau County, agreed and granted the motion.

In his opinion dismissing the Article 78 Proceeding, Justice Spinosa analyzed Petitioner's Federal Constitutional claims. He relied upon and cited to Federal cases analyzing similar Constitutionally based claims challenging sick leave policies under a rational basis standard. For example, Justice Spinosa cited to the decision of the Court of Appeals for the Eighth Circuit in Crain v. Board of Police Comm'rs of Metro. Police Dep't of City of St. Louis, 920 F.2d 1402, 1406-07 (8th Cir. 1991), as well as this court's decision in Vorhees v. Shull, 686 F. Supp. 389, 394-95 (E.D.N.Y. 1987). Applying Constitutional principles, Justice Spinosa held Petitioners'

4

Constitutional claims were mooted by the Respondents' newly instituted policy, which passed Constitutional muster. Thus, Justice Spinosa dismissed any claim that the Leave Policy violated the Constitution. The State Court justice made no finding whatever as to whether the leave Policy violated any state law provision under an arbitrary and capricious standard.

### B. Proceeding Before The New York State Commission on Human Rights

On August 6, 2007, approximately one month prior to the filing of the Article 78 Proceeding, Plaintiff filed a complaint of an unlawful discriminatory practice with the New York State Division of Human Rights (the "Agency"). The Agency complaint, which arose out of the same circumstances as the Article 78 Proceeding, and this action, alleged discrimination on the basis of creed. In a letter dated September 13, 2007, Plaintiff notified the Agency of her decision to withdraw her complaint. Accordingly, on September 20, 2007, the Agency ordered the complaint withdrawn and closed its file in the matter.

### III. The Motion to Dismiss

Defendants argue that Plaintiff's Section 1983 claim is barred by collateral estoppel. The basis for this argument is that Plaintiff has fully and fairly litigated, and lost on this issue in the context of the Article 78 Proceeding. Any claim alleging disparate treatment based upon race, gender or disability pursuant to either Title VII, or the State Human Rights Law is alleged to be barred by Plaintiff's inability to point to any particular case of disparate treatment. The State Human Rights Law claim is also sought to be dismissed on the ground that Plaintiff's voluntary withdrawal of her claim before the Agency deprives this court of subject matter jurisdiction over that claim. Finally, the claim against Chief Wing is alleged to be barred by the doctrine of qualified immunity.

Plaintiff asserts that the Article 78 Proceeding is no bar to this proceeding because the earlier proceeding was dismissed as moot, and such a proceeding could not afford Plaintiff the full measure of relief sought. She argues that the procedural posture of the case makes dismissal of her claims of disparate treatment premature. As to the claim that withdrawal of her state administrative complaint bars her state law cause of action, Plaintiff argues that because she never raised the issues of gender and disability discrimination before the Agency, those claims are not barred by her decision to withdraw her claim. Finally, Plaintiff claims that Chief Wing's actions preclude his reliance on a qualified immunity defense.

After outlining relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. Standard for Motions to Dismiss Pursuant to Rule 12(b)(6)

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim of relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

The "plausibility" language used by the Supreme Court in Bell Atlantic has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened

factual pleading is not the new order of the day, Bell Atlantic holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Bell Atlantic Corp., 127 S. Ct. at 1959.

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852*2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

II. Collateral Estoppel

A. Legal Principles

The doctrine of collateral estoppel, which, under certain circumstances, bars re-litigation of issues previously litigated and decided, applies to civil rights lawsuits brought pursuant to 42 U.S.C. §1983. Allen v. McCurry, 449 U.S. 90 (1980); Gill v. Stella, 845 F. Supp. 94, 100 (E.D.N.Y.1994). Application of collateral estoppel in such federal cases is governed by the Full Faith and Credit Act, 28 U.S.C. §1738, which requires federal courts to give the same preclusive effect to state court judgments as they would receive in the courts of that state. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); Burkybile v. Bd. of Educ. of Hastings-on-Hudson, 411 F.3d 306, 310 (2d Cir.), cert. denied, 126 S. Ct. 801 (2005). Thus, this court applies New York State law to determine the preclusive effect of the prior proceeding.

Under New York law, collateral estoppel will preclude re-litigation of an issue if the issue

sought to be precluded is identical to the issue in the first proceeding, and has been decided in the prior proceeding in the context of a full and fair opportunity to litigate. Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995); Caridi v. Forte, 967 F. Supp. 97, 100 (S.D.N.Y. 1997); see Capital Telephone Co. v. Pattersonville Telephone Co., 56 N.Y.2d 11, 17-18 (1982); Schwartz v. Public Administrator, 24 N.Y.2d 65, 71 (1969). In addition, the issue sought to be precluded from re-litigation must have been necessarily determined in the prior proceeding. Green v. Montgomery, 219 F.3d 52, 55 (2d Cir. 2000); Carlen v. Department of Health Services, 104 F.3d 351, 351 (2d Cir. 1996); Colon, 58 F.3d at 869; Rameau v. New York State Dep't. of Health, 741 F. Supp. 68, 70-71 (S.D.N.Y. 1990). An issue that is "'necessarily decided' must have been both 'actually decided' . . . and necessary to support a valid and final judgment on the merits." Beechwood Restorative Care Center v. Leeds, 436 F.3d 147, 153 (2d Cir. 2006).

B.  Collateral Estoppel Bars the Constitutional Claim

Defendants argues that because Plaintiff raised and litigated the issue of the Constitutionality of the Leave Policy in the context of the Article 78 Proceeding, collateral estoppel bars the Section 1983 claim here. In support of their position, Defendants point out that the allegations in the Article 78 Petition are, in many ways, identical to the allegations raised here. Thus, in addition to arguing that the Leave Policy was arbitrary, capricious and an abuse of discretion, Petitioners in the Article 78 Proceeding, including Plaintiff, argued that the Leave Policy violated several specifically enumerated Constitutional rights.

The court agrees that Plaintiff raised the same Constitutional raised here before the Article 78 court. As a party to the Article 78 Proceeding, Plaintiff had a full and fair opportunity to litigate those issues in the state court. Principles of claim preclusion require this court to

determine whether the Article 78 court's decision as to the Constitutionality of the Leave Policy, the issue sought to have preclusive effect here, was necessary to its holding. A review of that court's opinion reveals that the claim sought to be precluded was, indeed, necessary to the holding dismissing the Petition as moot.

As discussed above, the Article 78 court based its decision entirely on Constitutional grounds. That is evident from the text of the opinion, as well as the citation of cases therein. This is not a case where the Article 78 court held a state law or policy invalid on various grounds, or on state grounds alone. In such a case, no one issue would be deemed necessary to the judgment, and collateral estoppel would be no bar to future litigation of certain issues. See, e.g., Pilitz v. Incorporated Village of Rockville Centre, 2008 WL 4326996 *6 (E.D.N.Y 2008) (Section 1983 claim held not barred by claim preclusion where Article 78 court did not necessarily decide constitutional issue raised, but decided petition on state law ground). Here, there is no question but that the Article 78 court decided only the Constitutional issue raised, and that its finding as to that issue was necessary to its decision.

In view of the identity of issues raised, and the necessity of the Constitutional ruling to the Article 78 court's decision, the court holds that collateral estoppel bars Plaintiff from re-litigating the claim that the Leave Policy violates the Constitution. In so holding, the court notes that it is of no moment that the Article 78 petition was dismissed as "moot." This disposition of the case was wholly dependent upon the legal holding that the Leave Policy did not violate the Constitution, and is therefore entitled to preclusive effect. The court further notes that it matters not whether this court would agree or disagree with the holding of the Article 78 court as to the Constitutionality of the Leave Policy. What matters is that Plaintiff had a full and fair

opportunity to litigate that issue. Since the state court's decision on the issue was necessary to its holding, Plaintiff is barred from re-litigation of the same issue in the context of this lawsuit.

Finally, the court rejects Plaintiff's argument that the inability of the Article 78 court to award the full measure of relief sought here requires that there be no preclusive effect to the findings of the state proceeding. Such an argument applies only to the extent that res judicata is argued to bar this proceeding. See Colon v. Coughlin, 58 F.3d 865, 870 (2d Cir.1995); Davis v. Halpern, 813 F.2d 37, 37 (2d Cir.1987). As Defendants argue only claim preclusion, the issue of relief available in an Article 78 proceeding has no relevance.

### III. Effect of Withdrawal of State Agency Complaint

Defendants argue, and Plaintiff appears to concede, the general principle that a plaintiff's voluntary withdrawal of a complaint pending before the New York State Division of Human Rights bars a subsequent lawsuit based upon that complaint. See Emil v. Dewey, 428 N.Y.S.2d 887, 887 (1980).

Plaintiff and Defendants part company, however, as to the extent of this election of remedies bar. While Plaintiff argues that she is barred only to the extent of the precise ground raised before the Agency, Defendants argue that the bar applies to all actions arising from the incident forming the basis of the Agency complaint. The court agrees with Defendants' broader interpretation of the law.

The New York State Human Rights Law provides that a person complaining of discrimination has a cause of action "in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, *unless* such person had filed a complaint" with the

Agency. N.Y. Exec. L. §297(9) (emphasis added).[1] This election of remedies provision applies to a State Human Rights Law claim sought to be pursued in federal, as well as state court. Whidbee v. Garzarelli Food Specialists, Inc., 223 F.3d 62, 75 (2d Cir. 2000); Napoletano v. Damianos Realty Group, 2007 WL 1160411 *6 (E.D.N.Y. 2007).

The New York Court of Appeals has interpreted the State Human Rights Law as precluding an action in court that is "based upon the same incident," as the Agency complaint. Emil. 428 N.Y.S.2d at 887; see also Moodie v. Federal Reserve Bank of New York, 88 F.3d 879, 882-83 (2d Cir. 1995); White v. Home Depot, 2008 WL 189865 *3 (E.D.N.Y. 2008); Horowitz v. Aetna Life Ins. Co., 539 N.Y.S.2d 50, 52 (1989). Where there is a "sufficient identity of issue" between the Agency complaint and the court action, the subsequent litigation is barred. Spoon v. American Agriculturalist, Inc., 478 N.Y.S.2d 174, 175 (1984). The jurisdictional bar is not avoided by changing the legal theory of relief relied upon. Bhaglia v. State of New York, 644 N.Y.S.2d 398, 399 (3d Dep't 1996). Put simply, "a litigant cannot split claims and assert some in court and others before an agency if they all arise out of the same course of conduct." Benjamin v. New York City Dep't. of Health, 2007 WL 3226958 * 5 (N.Y. County 2007); see Craig-Orio v. Mt. Sinai Hospital, 607 N.Y.S.2d 391, 391-91 (2d Dep't 1994).

Applying these principles, it is clear that Plaintiff's State Human Rights Law claim is barred by the election of remedies provision of that statute. While Plaintiff may have couched her Agency claim as discrimination based only upon "creed," it is clear that her present claims

---

[1] The only statutory exceptions to the election of remedies bar are when the claim is dismissed by the Agency on the grounds of "administrative convenience," "untimeliness" or on the ground that "election of remedies is annulled." N.Y. Exec. L. §297(9). There is no claim that these precise grounds apply here.

11

arise out of the same incident forming the basis of the claim before the Agency, and are therefore barred. This is not a case where the claims before the Agency arise from completely different facts from those forming the basis of the complaint of discrimination. E.g., Goosely v. Binghamton City School Dist Bd. of Educ., 475 N.Y.S.2d 924, 925 (3d Dep't 1984) (breach of employment contract raised in court is completely different from, and therefore not barred by, fact that discrimination claim has been raised before Agency); Gondola v. Center Moriches Union Free Sch. District, 436 N.Y.S.2d 42, 43 (2d Dep't 1981)(same). Here, the incident of discrimination is identical, and Plaintiff may not be allowed to split her claims into those she wishes to pursue before the Agency and those that she wishes to pursue in court. Accordingly, the court dismisses the State Human Rights Law claims.

IV. Dismissal Of The Claims of the Title VII Disparate Treatment Is Premature

Defendants seek dismissal of the Title VII claims of disparate treatment on the ground that Plaintiff cannot point to any particular case where Defendants treated a similarly situated person differently. At this early stage of the proceedings, the court holds that Plaintiff has sufficiently pled disparate treatment on the grounds of race and gender to survive a motion to dismiss. Plaintiff may proceed to discovery as to these claims. The court notes that any claim of disparate treatment on the basis of disability was pled only with respect to the State Human Rights Law claim. In view of the fact that this state claim has been dismissed, Plaintiff's case proceeds only with respect to the Federal Title VII claims of disparate treatment based upon race and gender.

V. Qualified Immunity

Chief Wing argues that the claims against his are barred by qualified immunity. In view

of the facts that: (1) the court has dismissed the claims pursuant to Section 1983, and the State Human Rights Law and (2) there is no individual liability under Plaintiff's remaining Federal claim, the court need not reach the immunity issue. Instead, the court dismisses these remaining claims as against Chief Wing. See Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995) (individual employees cannot be held personally liable as "employers" under Title VII of the Civil Rights Act).

## CONCLUSION

For the foregoing reasons, the court grants the motion to dismiss the claims pursuant to Section 1983, as well as all claims alleged pursuant to the New York State Human Rights Law. The court also dismisses all claims as to Defendant Chief Joseph Wing. Plaintiff's Title VII claims of disparate treatment based upon race and gender may proceed to discovery. If the parties have not already done so, they are directed to contact the Magistrate Judge to whom this case is assigned for the purpose of entering into an appropriate discovery schedule. The Clerk of the Court is directed to terminate the motion to dismiss.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
December 22 2008